THE BOARD OF REGENTS FOR THE NORTHEAST MISSOURI STATE TEACHERS COLLEGE v. CORA I. PALMER, GEORGE E. GRIM, CLARENCE F. GRIM, SARAH M. GRIM WIMP, JESSE J. WIMP, DOROTHEA MAY GRIM MOREY, ROLLO J. MOREY and HUBERT L. COLLETT, Appellants.—No. 40175.—204 S. W. (2d) 291.

Division Two, September 8, 1947.

*Robert N. Jones, W. C. Frank, George J. England* and *Philip J. Fowler* for appellant.

*S. H. Ellison* and *L. F. Cottey* for respondent.

948

BARRETT, C.—The Sixty-Third General Assembly gave certain "State Educational Institutions" the power, through their governing bodies, to condemn property for a "project" provided in the act. Laws Mo. 1945, p. 1715. Pursuant to the act, the Board. of Regents. for the Northeast Missouri State Teachers College at Kirksville instituted this proceeding in condemnation, in Adair County, to acquire a tract of land to be used for dormitory buildings, one of the projects specified in the law. The purpose of the act is to permit specified educational institutions to take advantage of a Federal Act which seeks to provide housing for the families of servicemen and veterans attending educational institutions. 42 U. S.. C. A., Secs. 1571-1573. The fifteen defendants are the owners of the land under the will of Edward A. Grim. Upon the application of one defendant the venue was changed to Schuyler County. The Circuit Court of Schuyler County condemned the land, commissioners assessed the owners damages at $5,500.00 and eight of the defendant-owners appeal.

At the outset it is urged that the trial court erred in not sustaining a motion to dismiss the proceeding for the reason that the defendants had not been regularly summoned, the service being for a shorter time than the Civil Code provides. Mo. R. S. A., Sec. 847.58. It is further urged that the Circuit Court of Schuyler County did not have jurisdiction of either the subject matter of the proceeding or of the person of all the defendants because the land was in Adair

County and part of the defendants were summoned for the first time in Schuyler County. Then, it is urged that the court erred in not granting the appellant, Cora I. Palmer, a change of venue from Schuyler County, since she applied for the change of venue the first time she was lawfully summoned. But Sarah Grim Wimp was the only defendant who filed a motion to dismiss for the reason that service of process in Adair County was not timely. Furthermore, the educational institutions are authorized to "follow the procedure . . . provided by law for the appropriation of land or other property taken for telegraph, telephone or railroad right of ways" and as to Mrs. Wimp that statute was appropriately followed rather than Section 58 of the Civil Code. Mo. R. S. A., Sec. 1505; Mo. R. S. A., Sec. 847.2; Supreme Court Rule 3.02(a).

Mrs. Palmer's co-defendant, Mrs. Wimp, applied for and was given a change of venue from Adair County after her motion to dismiss was overruled and thereafter Mrs. Palmer was not entitled to another and further change of venue from Schuyler County as the defendants are entitled to but one change of venue, there being no objection to the first one and the interests of the parties defendant being identical. Mo. R. S. A., Sec. 1058; Kirby v. Davis (Mo. App.), 91 S. W. (2d) 215.

At the time the change of venue was granted all the defendants had not been properly summoned, either by personal service or by publication, and after the cause was transferred to Schuyler County four of the non-resident defendants were notified by publication. That fact, apparently, is the basis of the appellants' assignment that the court did not have jurisdiction of the parties or of the subject matter. But, after the cause was transferred to the Circuit Court of Schuyler County, that court was empowered to proceed as if the cause had originated there and nonresident or other parties, not previously served with process, could be notified either by publication or by personal service. Mo. R. S. A., Secs. 1066, 1071; Fears v. Riley, 148 Mo. 49, 49 S. W. 836. The proceeding was one in which a change of venue was permissible and the cause having been transferred the Circuit Court of Schuyler County thereby acquired jurisdiction of the subject matter. St. Louis, Oak Hill & C. Ry. Co. v. Fowler, 113 Mo. 458, 20 S. W. 1069; Galloway v. Galloway (Mo.), 169 S. W. (2d) 883.

On the merits it is urged, in the first place, that the court erred in entering a judgment condemning the land because by Section 27, Article I of the Constitution the right of eminent domain is given only to "the state, or any county or city" and cannot be exercised by any other agency. It is also urged that this proceeding was instituted and is being prosecuted by the Board of Regents of the Northeast Missouri State Teachers College when the act vests that right solely in the institution as such and not in the Board of Regents.

But, the appellants' principal argument is based upon a misconception of the law of eminent domain and the relationship of the constitutional provisions to that subject. "The power of eminent domain does not depend for its existence on a specific grant in the Constitution. It is inherent in sovereignty and exists in a sovereign state without any recognition thereof in the Constitution." 18 Am. Jur., Secs. 7-8, pp. 635-637. The constitutional provisions relating to the subject are the limitations upon the power. Southern Illinois & Mo. Bridge Co. v. Stone, 174 Mo. 1, 22, 73 S. W. 453. The right to exercise the power, or to authorize its exercise, is wholly a legislative function. State ex rel. Highway Commission v. Gordon, 327 Mo. 160, 163, 36 S. W. (2d) 105, 106. Section 27 of Article I of the present Constitution has to do with the condemnation of "property . . . in excess of that actually to be occupied by the public improvement" and is not in any manner a limitation upon who may exercise the right of eminent domain.

 The legislative branch of the government has the right to authorize the exercise of the sovereign power of eminent domain and in this instance that power has been conferred upon "Any State Educational Institution of the State of Missouri, as herein defined, . . . acting through its governing body, . . ." Laws Mo. 1945, p. 1717. The several educational institutions mentioned in the act are under the control and management of a Board of Curators or of a Board of Regents and it is the various boards and not the institutions who are authorized to sue and be sued or to exercise the prerogatives conferred upon the institutions. Mo. R. S. A., Secs. 10753, 10760; Head v. Curators of the University of Mo., 47 Mo. 220, 224.

 In this connection it is urged that there was no showing of any necessity for the taking of the land or that it is being taken for any public use. The point seems to be that the college owns twenty-five acres of land, eight of which are occupied by an athletic field, adjoining the appellants' tract and that it is therefore not necessary to condemn this land. But, once the power of eminent domain is conferred upon an agency of the state by the General Assembly the grant of the power carries with it the right to decide the essentially political questions of the necessity for its exercise as well as the expediency and propriety of doing so. City of Kirkwood v. Venable, 351 Mo. 460, 173 S. W. (2d) 8; American Telephone & Telegraph Co. v. St. L. I. M. & S. Ry. Co., 202 Mo. 656, 101 S. W. 576. The only question for the courts in this connection is "whether the contemplated use be public." Const. Mo., Art. I., Sec. 28. And certainly the acquisition of land by one of the named educational institutions for a "project" of "dormitory buildings" is a public use or purpose. Russell v. Purdue University, 201 Ind. 367, 168 N. E. 529, 65 A. L. R. 1384; 18 Am. Jur., Sec. 53, p. 682.

■ Next it is said, since the resolution of the Board of Regents authorizing the proceeding to acquire the land was passed on May 31st, 1946, and the act was not approved by the Governor until July 3rd, 1946, that there was no valid authorization to prosecute the proceeding and to condemn the land. Undoubtedly, since the authorization is to the governing body of the institution, the Board of Regents, proper preliminary proceedings, including a resolution, shown by the board's official records, are contemplated by the act. But it does not necessarily follow, in the circumstances of this case, that any deficiency in this respect will invalidate the entire proceeding. Here the act in conferring the power of eminent domain does not make a prior valid resolution by the board a condition precedent to the institution of the suit or to the validity of the subsequent proceedings. Compare 29 C. J. S., Sec. 223, pp. 1154-1162. Furthermore, while the introduction of the resolution was objected to when it was offered in evidence, the authority of the board to initiate and maintain the action was not challenged by "specific averments" in the pleadings (Mo. R. S. A., Sec. 847.45) and the appellants having joined issue on the merits are in no position to subsequently object to the validity of the preliminary proceedings which were not statutory jurisdictional prerequisites, the commencement and prosecution of the action indicating the respondents' determination of the necessity of its action. State ex rel. Kendall v. Mohler, 115 Ore. 562, 237 Pac. 690, 694.

■ Finally it is insisted that the act is invalid or was not in force at the time the proceeding was instituted because the bill was passed with an emergency clause "but no emergency was expressed in the preamble or the bill" as required by Section 29, Article III of the Constitution. The appellants do not develop the point other ■ than to say "The reference to the emergency in both places is merely a conclusion and no real emergency was set out as existing." Section 10 of the act expresses the emergency thus: "Because of the great increase in the number of students enrolled in state educational institutions as a result of conditions existing after World War II, there is an immediate need for the authority granted by this Act, and this Act being necessary for the immediate preservation of the public peace, health and safety, an emergency exists within the meaning of the Constitution of the State of Missouri . . ." Certainly it cannot be said that this declaration is such a mere conclusion as to invalidate the act as an improper expression of an emergency. See also the provisions of the Federal Act and its expressed purposes. 42 U. S. C. A., Secs. 1571-1574.

None of the appellants' assignments of error being well taken the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT. C., is adopted as the opinion of the court. All the judges concur.